[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant action comes to the court by way of appeal pursuant to § 12-118 Connecticut General Statutes. The original appeal was brought in two counts relating to contiguous pieces owned by the plaintiffs herein. At time of trial, the second count of the complaint was withdrawn and plaintiffs pursue this appeal on the first count only. The subject premises is in a certain piece or parcel of land located at 169 Third Avenue, Milford, Connecticut, sometimes designated as Block 80, Parcel 1 and also known as Lot #167, Map of Laurel Beach, Revised Plan, dated July 22, 1901. The premises is an unimproved, nonconforming building lot containing 5,000 square feet +/-. The plaintiffs claim that the assessed valuation of the subject parcel on the list of October 1, 1991 (i.e. 70% of the time and actual value), to wit: $85,680.00 was grossly excessive, disproportionate and unlawful. In furtherance of their position relative to value, the plaintiffs duly appealed to the Board of Tax Review of the defendant but said Board made no change in valuation.
The evidence established that fee to the premises was acquired in 1986. At said time, the plaintiffs knew the lot to be a nonconforming corner parcel with a tightly restricted building envelope. The plaintiffs had the parcel officially declared nonconforming by the zoning enforcement officer. Plaintiff Dennis Anderson, an attorney with 23 years of real estate experience and a member of the Milford Zoning Board of Appeals, testified in his opinion, obtaining variance relief to expand said envelope would be extremely difficult if not impossible due to neighborhood opposition. He went on to give his opinion as to fair market value, to wit: $70,000.00. Said value was based, inter alia, on the following limitations:
A. Nonconformity of parcel;
B. Unlikelihood of variance relief;
 C. A 1989 comparable of premises located at 136 Fourth Place; and
D. His overall experience in terms of value, vis-a-vis CT Page 9422 raw land allocation.
The plaintiffs thereafter offered the testimony and written appraisal of Jay Jamron, certified real estate appraiser. (Plaintiffs' Exhibit 1). In testifying as to the difficulty in reaching a true fair market value for the subject, due to the lack of true comparables, he provided the court with a land value analysis to determine a land/sales price ratio. To that end, he conducted an investigation of lots that were purchased, developed and then sold in the past several years to derive a ratio of lot purchase price to final sales price upon completion of a new dwelling. Based on this analysis, Mr. Jamron concluded that a prudent purchaser or builder will pay for a lot, one-third of what a lot and new dwelling thereon is eventually sold for. Simply put, raw land value equals 33.3% of eventual sales price. He further testified that, pursuant to the sales comparison approach, the range that a potential dwelling on the subject parcel would command would be $200,000.00 to $225,000.00. Therefore, his opinion as to fair market value of the subject parcel as of October 1, 1991 is $70,000.00, all as more specifically set forth in Plaintiffs' Exhibit 1.
The defendant offered testimony through William Gaffney, Assessor for the City of Milford. Gaffney confirmed the opinion of Jamron, that reaching true and actual fair market value for the subject was indeed very difficult due to the lack of true comparables. Having done a similar land/sale price ratio analysis, Gaffney concluded and testified that a prudent purchaser or building would pay for a lot, one-half of what the lot and a new dwelling thereon is eventually sold for. In other words, raw land value equals 50% of eventual sales price. Based upon a sale comparison analysis, his opinion of potential sales price for this parcel with new dwelling would be $246,000.00. Therefore, fair market value of the subject parcel as of October 1, 1991 is $123,000.00.
The court finds from a totality of the evidence that a lot value/sales price ratio of 40% and potential full development sales price of $240,000.00 to be the weightier indicia of value. On the basis of those findings, the court concludes that the true and actual value of the subject property as of October 1, 1991 is $96,000.00 and so finds. The court further finds that 70% of said true and actual value is $67,200.00. The defendant is ordered to reimburse the applicants for any overpayment of taxes made prior to the entry hereof together with interest and costs. CT Page 9423
Comerford, J.